## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RACHEL J. GREEN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Civil Action No. 2:14cv00013 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

### *I. Background and Standard of Review*

Plaintiff, Rachel J. Green, ("Green"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq*. (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

Case 2:14-cv-00013-PMS   Document 18   Filed 09/22/15   Page 1 of 10   Pageid#: 891

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Green protectively filed her application for SSI on June 1, 2010,[1] alleging disability as of May 15, 2010, due to bipolar disorder, manic depression, panic disorder and Crohn's disease. (Record, ("R."), at 12, 229-32, 242, 246, 276.) The claim was denied initially and on reconsideration. (R. at 139-43, 144, 146-48, 150-52.) Green then requested a hearing before an administrative law judge, ("ALJ"). (R. at 153-54.) A hearing was held on October 10, 2012, at which Green was represented by counsel. (R. at 29-49.)

By decision dated October 23, 2012, the ALJ denied Green's claim. (R. at 12-22.) The ALJ found that Green had not engaged in substantial gainful activity since June 1, 2010, the date of her application. (R. at 14.) The ALJ determined that the medical evidence established that Green suffered from severe impairments, including depression, bipolar disorder and panic disorder, but he found that Green did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-16.) The ALJ found that Green had the residual functional capacity to perform light work[2] that required no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, no concentrated exposure to fumes, odors, dust, gases or poor ventilation and no more than occasional interaction with the general public. (R. at 16-20.) The ALJ found that Green was unable to perform her past work. (R. at 20-21.) Based on Green's age, education, past work experience and residual

---

[1] The record shows that Green filed a prior application for SSI, which was denied by ALJ decision dated May 14, 2010. (R. at 77-85.) Green, apparently, did not seek review of this decision.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2015).

functional capacity and the testimony of a vocational expert, the ALJ also found that Green could perform jobs existing in significant numbers in the national economy, including jobs as a housekeeping cleaner/hotel maid, a merchandise marker/price marker and a deli cutter/slicer. (R. at 21.) Therefore, the ALJ found that Green was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. § 416.920(g) (2015).

After the ALJ issued his decision, Green pursued her administrative appeals, (R. at 8), but the Appeals Council denied his request for review. (R. at 1-5.) Green then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2015). The case is before this court on Green's motion for summary judgment filed November 20, 2014, and the Commissioner's motion for summary judgment filed January 26, 2015.

## II. Analysis

Green was born in 1982, (R. at 225), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Green has a General Equivalency Development diploma, ("GED"). (R. at 33.) She has prior work experience as a school bus monitor. (R. at 34.) At her hearing, Green testified that she had attempted to work other jobs, but she quit each of those jobs after no more than three days due to her anxiety. (R. at 34-35.) She stated that she was treating with both a psychiatrist and a counselor. (R. at 38.) Green also testified that, when she has a flare-up of her Crohn's disease, she is required to go to the bathroom at least 10 times a day. (R. at 39.)

A. Hankins, a vocational expert, also was present and testified at Green's hearing. (R. at 45-48.) Hankins was asked to consider a hypothetical individual of Green's age, education and work experience, who could perform light work, but who would be limited to no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, who should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation, and who should have no more than occasional interaction with the general public. (R. at 45-46.)  Hankins stated that such an individual could not perform work as a school bus monitor due to the limitation on interaction with the general public. (R. at 46.) He stated that such an individual could perform jobs existing in significant numbers in the national economy, including those of a housekeeping cleaner, such as a hotel maid, a merchandise or price marker and a deli cutter or slicer. (R. at 46-47.) Hankins stated that all jobs would be eliminated if the individual had no useful ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment with the public, to interact with supervisors, to deal with work stresses, to maintain attention and concentration, to behave in an emotionally stable manner, to relate predictably in social situations and would be absent more than two days a month. (R. at 47.)

In rendering his decision, the ALJ reviewed records from Richard J. Milan, Jr., Ph.D., a state agency psychologist; Julie Jennings, Ph.D., a state agency psychologist; Dr. Michael Hartman, M.D., a state agency physician; Dr. Donald Williams, M.D., a state agency physician; Dr. Uzma Ehtesham, M.D., a psychiatrist; Robert S. Spangler, Ed.D., a licensed clinical psychologist; Susan Myers, L.C.S.W., a licensed clinical social worker; Norton Community Hospital; Dr. Steven Vest, M.D.; Dr. Pauline Reed, M.D.; Dr. L.D. Amato, M.D.; Dr. Thomas E. Roatsey, D.O.; and various pharmacy records.

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2014); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Green argues that the ALJ erred by finding that her Crohn's disease was not a severe impairment. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) Green also argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 6-9.) In particular, Green argues that the ALJ improperly rejected all psychological evidence of record as to her mental impairment's effect on her work-related abilities and improperly substituted his own opinions on this issue. (R. at 9.)

-5-

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

This court needs to look no further than the face of the ALJ's opinion to find error in this case. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2015). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple job instructions, use of judgment, responding

-6-

appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §416.921(b) (2015). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

The ALJ found that Green did not suffer from a severe physical impairment. (R. at 14-15.) Nonetheless, the ALJ placed restrictions on Green's physical work capacity by finding that she could perform only light work that required no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and no concentrated exposure to fumes, odors, dust, gases or poor ventilation. These are more than "minimal" limitations. Since the ALJ has not identified any severe physical impairment, the court cannot adequately determine whether the evidence of record supports the finding. Thus, I find that the ALJ has not sufficiently explained his finding to allow an appropriate review by this court. *See Akers*, 131 F.3d at 439-40.

In addition, I find that substantial evidence does not support the ALJ's decision with regard to Green's mental residual functional capacity. Every mental health expert who has considered the issue has opined that Green's severe mental impairments place greater restrictions on her work-related abilities than those found by the ALJ. The only mental restriction the ALJ placed on Green's work-related abilities was that she could not perform work that required more than occasional interaction with the general public.

-7-

On April 16, 2010, Robert S. Spangler, Ed.D., a licensed psychologist, performed a consultative psychological evaluation of Green at her counsel's request. (R. at 601-08.) According to Green, she suffered a panic attack on her way to the evaluation. (R. at 601.) Spangler completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental), which stated that Green's ability to make all occupational, performance and personal-social adjustment was either seriously limited or nonexistent. (R. at 606-08.) Spangler stated that these restrictions were based on Green's moderate to severe depression, moderate anxiety and borderline intelligence. (R. at 608.) Spangler stated that Green would be absent from work more than two days a month due to her mental impairment and/or treatment. (R. at 608.) It is important to note, that while Spangler's opinions are based on Green obtaining a full-scale IQ score of 79, the test results contained in his report stated that her full-scale IQ score was 69, which, if correct, would place her in the intellectual disability range under the listed impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (2015).

On September 9, 2010, state agency psychologist, Julie Jennings, Ph.D., completed a Mental Residual Functional Capacity evaluation based on her review of the evidence of record. (R. at 97-99.) Jennings stated that Green was moderately limited in her ability to maintain attention and concentration for extended periods, to work in coordination with on in proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others. (R. at 98-99.) Jennings stated that these limitations were supported by the evidence that Green suffered from bipolar disorder, anxiety and depression. (R. at

-8-

98-99.) Jennings did state that Green could perform simple, unskilled, nonstressful work. (R. at 99.)

On May 19, 2011, state agency psychologist, Richard J. Milan Jr., Ph.D., completed a Mental Residual Functional Capacity evaluation based on his review of the evidence of record. (R. at 112-14.) Milan stated that Green was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with on in proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others. (R. at 113-14.) Milan stated that these limitations were supported by the evidence that Green suffered from a history of bipolar disorder, anxiety and depression. (R. at 114.) Milan did state that Green was capable of understanding, recalling and carrying out simple, routine tasks with minimal social demands over a normal workday/workweek. (R. at 114.)

Dr. Uzma Ehtesham, M.D., a psychiatrist, completed Medical Assessment of Ability to Do Work-Related Activities forms on October 22, 2010, March 30, 2012, and September 21, 2012. (R. at 640-42, 679-81, 768-70.) Dr. Ehtesham opined that Green had poor or no ability in nearly all work-related mental areas based on decreased memory, decreased concentration, problems with social functioning, anger issues, severe anxiety attacks, severe depression and sleep problems. (R. at 640-41, 680, 768-69.)

On April 3, and October 8, 2012, licensed clinical social worker Susan Myers completed Medical Assessment of Ability to Do Work-Related Activities Forms on which she, too, stated that Green had poor or no ability to make most occupational, performance, and personal/social adjustments. (R. at 683-85, 795-97.) She noted that Green was diagnosed with panic disorder and major depression, recurrent, moderate, which resulted in Green's inability to be employed, much less make occupational adjustments. (R. at 683.) Myers wrote that Green's memory, concentration and attention continued to be seriously limited and that her ability to adjust was poor. (R. at 684.) Myers stated that Green was unpredictable in uncontrolled environments. (R. at 684.) Myers also opined that Green would be absent from work more than two days a month. (R. at 685.)

While the ALJ must weigh the medical evidence, he may not simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir.1984).

It is for all of these reasons stated herein that I find that substantial evidence does not support the ALJ's denial of Green's SSI claim. Therefore, I will enter an appropriate order and judgment remanding this case to the Commissioner for further consideration consistent with this Memorandum Opinion.

DATED:    September 22, 2015.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-10-